# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 29, 2010

No. 09-60099

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

KIM ROCHELL WATSON

Defendant-Appellant

---

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:08-CR-40-1

---

Before DEMOSS, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Kim Rochell Watson ("Watson") appeals her conviction and sentence for interfering with airport security personnel in violation 49 U.S.C. § 46503. Ms. Watson claims: 1) she was prejudiced by a material variance between the indictment and the evidence subsequently presented at trial; 2) the evidence at trial was insufficient as a matter of law; and 3) the district court erred by imposing a two-level sentence enhancement for obstruction of justice based on her trial testimony. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-60099

## I. FACTS AND PROCEEDINGS BELOW

"We recite the facts in the light most favorable to the verdict." *United States v. Olis*, 429 F.3d 540, 541 n.1 (5th Cir. 2005). On January 24, 2008, Watson and her husband traveled to the Gulfport-Biloxi Regional Airport in Gulfport, Mississippi, to catch a flight back to their home in Toledo, Ohio. As Watson passed through security, Transportation Security Officer ("TSO") James Jacobs stopped the x-ray machine he was operating to remove Watson's carry-on luggage for additional inspection after he observed liquids in her bag. TSO Eric Brans informed Watson that Transportation Security Administration ("TSA") regulations prohibit passengers from transporting liquids, gels, or aerosols in quantities over 3.4 ounces. TSO Jacobs and several passenger-witnesses testified at trial that, in response, Watson became irate, began cursing, and berated the TSA personnel manning the security checkpoint. TSO Brans and Jacobs continued attempting to explain the TSA rules to Watson until finally instructing her to have a seat outside of security to calm down.

About the same time, Gulfport Police Officer Kelley Clark arrived to help manage the situation and again explain the TSA regulations to Watson. Clark had been detailed to the airport as an airport police officer pursuant to an inter-local agreement between the airport and the City of Gulfport. Watson remained defiant, and Clark warned Watson that she would be taken to jail if she could not control her outbursts and profanity. In response, Watson stated, "Sh\*\*, take me to jail." Clark opted to give Watson more time to calm down rather than arresting her and proceeded through security where Watson's husband had also become belligerent. When Clark reached the other side of checkpoint, Watson's husband was swearing at the TSA personnel. Clark warned him that if he continued she would be forced to arrest him. When he refused to comply, Clark began to arrest him for his use of profanity.

2

No. 09-60099

As Clark began to place handcuffs on Watson's husband, Watson yelled from the other side of security: "If you are going to take him to jail, you are going to have to take me, too." Watson leapt from her chair and ran through the checkpoint while yelling obscenities. As she passed through the metal detector, Watson shoved TSO Darryl Anderson out of the way. Watson then lunged at Clark and grabbed her around the throat before grabbing Clark by her hair and pulling her down. Watson continued swinging and kicking at Clark until she and her husband were restrained and removed.

Watson was charged in a one-count indictment filed on April 8, 2008. The indictment alleged that Watson "interfere[d] with the performance of the duties of airport employees who had security duties within the airport" in violation of 49 U.S.C. § 46503. Specifically, the indictment alleged Watson refused to cooperate with the screening process, shoved a screener, kicked a law enforcement officer who was on the scene to assist the TSA, and ran through a metal detector without permission to pass. In a jury trial, Watson was found guilty of violating § 46503 for assaulting both Clark and Anderson. The jury found Watson not guilty of assaulting a TSA supervisor.

Watson was sentenced under the 2008 version of the United States Sentencing Guidelines. The Probation Office recommended that Watson be sentenced under Sentencing Guidelines § 2A2.4, which carries a base offense level of 10. The Probation Office also recommended a three-level increase for physical contact and a two-level increase for infliction of bodily injury. As a result, Watson had a total offense level of 15 with a criminal history category of I. The resulting guidelines range was 18 to 24 months. The Government timely objected to the Pre-Sentence Report ("PSR") and requested a two-level enhancement for obstruction of justice. The district court sustained the government's objection, thus raising the offense level to 17 and resulting in a guidelines range of 24 to 30 months. The district court then granted Watson a

3

downward departure and sentenced her to 18 months of imprisonment. Watson timely appealed.

## II. DISCUSSION

In her briefing, Watson suggests that she only advances two claims of error. In reality, Watson asserts three distinct claims: 1) one claim of error flowing from an alleged variance between the indictment and proof at trial as to Clark; 2) one claim of error arising from allegedly insufficient evidence as to the assault on Anderson; and 3) one claim of error regarding the obstruction-of-justice sentencing enhancement. As each of these claims are subject to different standards, we address each issue separately.

*A. Material Variance – Clark*

Though labeled a sufficiency of the evidence claim, Watson's first alleged error is actually a material, or fatal, variance claim. Specifically, Watson points to the language in the indictment stating that she "did interfere with the performance of the duties of airport employees who had security duties within the airport, *namely security screening personnel under the supervision of the [TSA].*" (emphasis added). The Government does not contend that it proved either that Clark was serving as a screening officer or that she was working under the supervision of the TSA.

"To prevail on a material variance claim, [Watson] must prove (1) a variance between the indictment and the proof at trial, and (2) that the variance affected [her] substantial rights." *United States v. Morgan*, 117 F.3d 849, 858 (5th Cir. 1997). Whether the Government's failure to prove Clark was a screening officer under the supervision of the TSA constituted a variance is debatable. *See United States v. Delgado*, 401 F.3d 290, 295 (5th Cir. 2005) ("A variance arises when the proof at trial depicts a scenario that differs materially from the scenario charged in the indictment but does not modify an essential element of the charged offense.") Nonetheless, even assuming *arguendo* that the

"namely" clause created a variance, Watson has failed to demonstrate the materiality of that variance.

"A variance is material if it prejudices the defendant's 'substantial rights,' either by surprising the defendant at trial or by placing the defendant at risk of double jeopardy." *United States v. Robinson*, 974 F.2d 575, 578 (5th Cir. 1992) (citing *Berger v. United States*, 295 U.S. 78, 82 (1935)). Conversely, "a variance is immaterial if it does not impair the defendant's ability to defend himself through failing to identify the nature of the charge." *Id.* (quotation omitted).[1] Here, the indictment clearly identified the conduct at issue so as to avoid any undue prejudice from the surplus "namely" clause. In fact, the indictment specifically referenced Watson's assault on Clark when it stated she interfered by "kicking a law enforcement officer on the scene to assist the [TSA] . . . ." Watson cannot reasonably assert that the minor variance she claims was created by the "namely" clause caused her to be surprised at trial as to the nature of the charge against her or as to the specific conduct giving rise to that charge. Accordingly, Watson is not entitled to relief on her claims regarding the assault on Clark.[2]

## B. Sufficiency of the Evidence – Anderson

Watson next claims the jury lacked sufficient evidence for its finding that she assaulted Anderson, thus interfering with his ability to perform his security-

---

[1] Watson does not contend that identification as a screening officer or employment by the TSA constitute elements of the offense set forth under 49 U.S.C. § 46503. Instead, Watson merely claims the Government failed to prove these facts in keeping with the underlying indictment. Accordingly, we do not address whether these facts constitute necessary elements of the § 46503 offense.

[2] We do not address the question of whether the evidence at trial supported the conclusion that Clark, a Gulfport officer on loan to the airport, constituted "a federal, airport, or air carrier employee" under the statutes as Watson has failed to raise that issue. *See Askanase v. Fatjo*, 130 F.3d 657, 668 (5th Cir. 1997) ("All issues not briefed are waived.").

related duties.[3]  Where, as here, a sufficiency of the evidence argument is raised in a timely motion for judgment of acquittal, we "examin[e] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict, and ask[] whether a rational trier of fact could have found guilt beyond a reasonable doubt." *United States v. Garcia*, 567 F.3d 721, 731 (5th Cir.), *cert. denied sub nom. Arriaga-Guerrero v. United States*, 130 S. Ct. 303 (2009).  "'It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt.'"  *Id.* (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc)).  "'A jury is free to choose among reasonable constructions of the evidence.'"  *Id.* (quoting *Bell*, 678 F.2d at 549).

Watson argues that inconsistencies in the testimony of Anderson negated his testimony that Watson shoved him as she passed through the metal detector. Specifically, Watson points to Anderson's admission that he did not include the fact that he was shoved in his incident report.  Additionally, Watson claims Anderson "abandoned" his testimony regarding the shove on cross-examination. Even assuming Watson's contentions were correct and had the effect of negatively affecting Anderson's credibility, no less than three other witnesses testified at trial that they saw Watson shove Anderson.  The only countervailing evidence was Watson's own self-serving testimony.  We will not usurp the role of the jury to make credibility determinations or weigh contradictory evidence of this sort.  *Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 362 (5th Cir. 2004) ("[T]he court may not make credibility determinations or weigh the evidence, as those are jury functions.").  The jury had testimony from numerous

---

[3] Watson does not dispute the definition of assault charged to the jury.  Instead, the entirety of her briefing on this issue is directed at the Government's offer of proof. Accordingly, we do not address any issues relating to that instruction.

witnesses to support its conclusion that Watson assaulted Anderson. In light of this other evidence, the jury was not required to accept Watson's self-serving denials. *See United States v. Richards*, 204 F.3d 177, 209 (5th Cir. 2000), *overruled on other grounds by United States v. Cotton*, 535 U.S. 625 (2002). Accordingly, the evidence was sufficient to permit a reasonable jury to find that Watson assaulted Anderson.

*C. The Obstruction-of-Justice Sentencing Enhancement*

Watson also assails the sentence imposed by the district court. Watson alleges that the district court erred when it imposed a two-level enhancement for obstruction of justice at the request of the Government based on Watson's misleading testimony at trial. More precisely, Watson contends: 1) the district court premised its decision on Watson's denial of guilt; 2) the district court failed to identify the perjurious testimony giving rise to the enhancement; and 3) the district court failed to make a legally sufficient finding that Watson willfully lied or committed perjury.

This court reviews district court sentencing decisions for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). The district court's interpretation or application of the Sentencing Guidelines is reviewed de novo, and its factual findings are reviewed for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

"[I]n order for the [obstruction-of-justice] enhancement to apply, the fact of perjury need not be tried to a jury and may instead be found by the sentencing judge by a preponderance of the evidence." *United States v. Williams*, 517 F.3d 801, 808 (5th Cir. 2008). When reviewing an obstruction-of-justice enhancement, "the district court's factual findings – its findings as to what acts were performed – are reviewed only for clear error." *United States v. Brown*, 470 F.3d 1091, 1093 (5th Cir. 2006). "A ruling that those findings permit an obstruction-of-justice enhancement is a question of law, reviewed de novo." *Id.* at 1094.

Watson first contends that the district court premised the imposition of the obstruction enhancement on the basis of Watson's denial of the charges against her. Yet the trial court clearly explained its findings and reasons for imposing the obstruction enhancement – none of which related to her denial of the charges against her. Next, to the extent Watson complains the district court failed to specify the parts of her testimony giving rise to the enhancement, the district court was under no obligation to "identify [the] specific perjurious statements" underlying its decision. *United States v. Gonzalez*, 163 F.3d 255, 263 (5th Cir. 1998).

Finally, Watson's broader contention that the district court failed to make proper findings to support the imposition of the obstruction enhancement is simply incorrect as a matter of law. In *United States v. Dunnigan*, 507 U.S. 87 (1993), the Supreme Court addressed an extremely similar situation and an extremely similar set of findings.[4] The Court explained that, while it is "preferable for a district court to address each element of the alleged perjury in a separate and clear finding," it is sufficient for a district court to make a finding of obstruction of justice that "encompasses all of the factual predicates for a finding of perjury." *Id*. at 95. At sentencing, the district court found on the record that:

> [I]t is the opinion of the Court that the record demonstrates that Ms. Watson did provide testimony which was false at trial, that the testimony was material, and there is no evidence before the Court

___

[4] In *Dunnigan*, the Supreme Court expressly determined that the following entry of findings was sufficient to permit the imposition of an obstruction-of-justice enhancement:

> The court finds that the defendant was untruthful at trial with respect to material matters in this case. By virtue of her failure to give truthful testimony on material matters that were designed to substantially affect the outcome of the case, the court concludes that the false testimony at trial warrants an upward adjustment by two levels.

*Dunnigan*, 507 U.S. at 95 (internal quotation marks, alterations, and emphasis omitted).

which tends to show that it was as a result of confusion or mistake
or faulty memory, but was instead an intentional effort to mislead
that jury.

The court explained that it premised these findings on the extraordinary, irreconcilable inconsistencies between Watson's testimony at trial and the testimony of other witnesses as well as the video evidence. The district court's findings, which closely mirrored those reviewed by the Supreme Court, clearly meet the standard set in *Dunnigan*. Accordingly, the district court did not err when it imposed a two-level obstruction-of-justice enhancement in the instant case.

### III. CONCLUSION

Watson has failed to demonstrate that the alleged variance between the indictment and the proof at trial as to whether Clark was a screening officer or whether she was working under the supervision of the TSA affected Watson's substantial rights. Additionally, the jury had more than sufficient evidence to conclude that Watson assaulted Anderson when she passed through the metal detector before her confrontation with Clark. As such, Watson's claims of error as to her conviction fail.

Finally, Watson is not entitled to relief from her sentence on the grounds that the district court erred when it imposed a two-level obstruction-of-justice enhancement. The district court did not clearly err in finding Watson perjured herself at trial, and it entered legally sufficient findings to support its imposition of the enhancement.

Accordingly, we AFFIRM.